Case number 19-1337, Juries Abu-Joudeh v. Heather Schneider et al. Orguments scheduled to be 15 minutes per side. Mr. Eric A. Ledes for the appellant. Good morning, your honors. May it please the court. Eric Ledes, I represent the appellant plaintiff, Juries Abu-Joudeh. I request five minutes for rebuttal time, please. All right. Thank you. This case is about a violation of the Fourth Amendment for an unlawful search and seizure. My client and his wife were home, and two repossession men appeared at their house to repossess my client's truck. My client went outside, took the truck, drove it into a garage, closed the garage door, and the garage was locked, and the repossession men were unable to get the vehicle. My client and his wife then proceeded back into their home. The two repossession agents, Mr. Edwards and Mr. Lavack, called the police because of a domestic disturbance they alleged between my client and his wife. Two police officers arrived on the scene simultaneously. One, Officer Heather Schneider, and two, Rick Sebring, a trooper with the Michigan State Police. They arrived on the scene and were invited into the home to talk to my client and his wife of whether a domestic disturbance was there or not. While they were investigating, a third officer arrived on the scene, which is the crux of the factual issue of this case, and that officer was Officer Scott Sheets. When Officer Sheets was there, he then assessed the scene inside the house, and then he walked out of the house and spoke with Mr. Edwards and Mr. Lavack. The three of them then attempted to open up the garage through the main door, could not get it open, so the three of them walk around to a side door entry into the garage. The garage was then entered into by Officer Sheets. He then opened the main door and allowed Mr. Edwards and Mr. Lavack to come in to repossess the vehicle. Officer Sheets did not have a warrant to enter into that garage. He did not have the authority to enter into that garage. This case was determined by the district court on summary judgment, and there is a material factual dispute of one, whether Officer Sheets was the third officer who arrived on the scene, and the second issue of material fact is whether it was Officer Sheets who unlawfully accessed the garage or not. Since, again, this is based on an order granting summary judgment, we need to determine whether there is a genuine issue of fact for trial. The lower court held that the specific identification, meaning Sheets being identified by name, was necessary for plaintiff's claim to survive. And the lower court based its decision on that lack of identification. During deposition testimony, both my client's wife, Ms. Yasmin Abujoda, and Mr. Lavack both could not name Sheets by name. They gave physical descriptions or they gave general descriptions of which officer it was that came in or part of a uniform, but neither one could identify him by name. Now, this is where the lower court erred, because Sheets was identified by name in the lower court, and there was Officer Heather Schneider's report, which was lower court document 55-8, and it's page ID 409 and 410. In that report that Officer Schneider authored, and was part of the lower court record, she states that her and Trooper Sebring arrived at the scene first, spoke with my client and his wife. She then, because of an injury that was suffered by my client during an altercation inside of the house, EMS was called. But they were not there yet. Once EMS was called, Officer Schneider states, once Chief Sheets showed up, I advised him to watch Yasmin, the wife. Again, this is in the lower court record on page ID 410 of Officer Schneider's report, which means Officer Sheets is now the third officer on the scene. He has been specifically ID'd from the lower court record. That is what I am asserting is the error of the district court judge in not finding that Officer Sheets was identified by a specific name. Sheets filed an affidavit that said he wasn't there, he didn't do it, and they got the wrong guy. Sheets' affidavit, if you look at the specific wording, he says that he did not unlawfully or unauthorized enter the garage, but he affirmatively says, I did not enter the vehicle. He doesn't say, I did not enter the garage. Does he say he wasn't there? No, not in the affidavit, no. He just said he did not. One of the issues, whether he's the third officer, he doesn't deny that, that he is the third officer? The lower court record is silent of whether he states he's the third officer or not. No, the affidavit's silent? Of that issue, yes it is, Your Honor. Okay, so the affidavit doesn't rebut the circumstantial evidence on that? Correct. Okay. So the only issue before us on appeal here is whether there's enough evidence that Officer Sheets may have broken into the garage, that there's a dispute of material fact as to whether he was the person who broke into the garage. And if there is sufficient evidence to create a dispute of fact, then summary judgment would have been wrongfully granted. Is that the issue before us? That's one of the two factual issues, the first one being is Officer Sheets the third officer? The second factual issue is whether it was Officer Sheets who accessed the garage, Your Honor. Right. Actually, he had to have been there. Correct. Not whether he is. We don't have to decide whether he is, but whether there's genuine issue. Correct. And to Judge Clay, your question, we have deposition testimony from Mr. Edwards and Mr. Labeck, who are the other two who are at the side door with Officer Sheets. And their testimony was to what? Said what? Mr. Edwards stated in his deposition he did not go into the garage, he did not see anyone go into the garage, has no idea how that garage was accessed. Mr. Labeck testified that he did not go in, but he says, and I quote, he let me in, in the male pronoun, and it was the officer, not the trooper. At the time, there's three officers on the scene, one female, Heather Schneider, a trooper, Rick Sebring, and then you have Officer Sheets. So with his deposition testimony, it has a reasonable conclusion as Officer Sheets opened the garage. Did you take Officer Sheets' deposition? No. I was not the attorney on the lower court, and the deposition of Officer Sheets was not taken. Why not? I would love to have an answer to that question, Your Honor. I do not. It seems rather important. Again, I would love to have an answer to that question. I do not know why Officer Sheets' deposition was not taken. Okay. But from the lower court record, you have the deposition transcript, though, of the other two repossession men, and Officer Sheets were there. Those two said, we didn't do it. If there's three people standing at the door, two said, I didn't do it. And the third one says, I didn't unlawfully or without authorization enter the garage. Therefore, that is a genuine issue of material fact, that the lower court should not have granted summary judgment. It should have continued on to trial. Now that you have the specific references to the lower court record that there is a material genuine issue of fact in this case, both to the third officer and to whether Officer Sheets accessed the garage, I submit that the lower court did err and that this court should overrule that decision and remand this case back to the district court. Let me just ask you here, what are the potential damages? Is it just the damaging of the garage door with the crowbars? Is that the only bad thing that happened that created damages in favor of your client? Or is there something else here? I don't have to show the actual damage at this state of the case of whether there's a factual issue of whether there was an improper search and seizure under the Fourth Amendment. There are some monetary damages that were suffered because of this, not just to physical damage to the garage, but also to loss of the vehicle wrongfully, and there was also personal damage to my client. Well, the vehicle was only gone one day from what I understand. It was a brief period of time, yes, Your Honor. Okay. You have no other questions? I guess I do. I mean, the district judge, Judge Cleland, overruled the magistrate's ruling on this case. Yes, Your Honor. The magistrate originally held that the, was it the affidavit he refused to consider? It was the difference of the application of what task. The magistrate judge and Judge Cleland, they were looking at, do we look at this case from an excessive force type of cases where you don't have to have the specific reference or the specific identification, where Judge Cleland used more of the illegal search and seizure cases where just by his mere presence is not enough to create a genuine material fact. So that was the difference of what Judge Cleland used to overturn Magistrate Judge Stafford's recommendation. Thank you. Thank you. Good morning, Your Honors. May it please the Court. James Tam on behalf of Scott Sheets. Your Honor, this is a claim involving a repossession of a vehicle by private parties and an issue of whether or not the police ultimately, my client, Mr. Sheets, allowed access to a garage that allowed the possession to occur. Plaintiff's brief says the sole issue is whether or not the appellee, Mr. Sheets, was identified as a police officer who opened the garage and allowed the access. And Judge Cleland determined that there was no genuine issue of material fact and that plaintiff had not carried their burden in that regard. Of course, we're looking at this. We're not trying to figure out whether we agree with Judge Cleland. We're doing a de novo review here, so it might be better for you to address the elements of summary judgment. Thank you, Your Honor. And Judge Cleland, the difference here is, essentially, we agree in some respects with the facts that were recited by the appellee, but two private individuals, Mr. Levesque and Mr. Edwards, who were employed by Best Recovery, went to the Abu Jaday's house. They had hooked the vehicle up for the purpose of repossession to the truck. Then Mrs. Jaday and Mr. Abu Jaday discovered that the repossession was ongoing. They came out. They confronted Mr. Levesque and Mr. Edwards. There was some sort of a scuffle. According to the repossession officers who were there at the time, Mrs. Abu Jaday was struck by her husband. They became concerned. They called the 9-1-1, made the 9-1-1 call. Of course, both the husband and wife denied that the husband struck the wife. So, I mean, there are all kinds of factual disputes in here. They do, Your Honor. What does that have to do with whether Sheets is the third officer? It doesn't, Your Honor. Okay. I mean, there is a third officer. The police report says he's the third officer. Your Honor, I Why doesn't the police report itself establish the genuine issue of material facts, whether he's the third officer? Well, Your Honor, more importantly, it's not that there are three officers. Mrs. Abu Jaday testified that there were four officers that were present. And the only way that officer – when this lawsuit was filed long after the episodes that occurred in 2014, Officer Sheets didn't offer a separate report because he wasn't the agency that was present. There were two reports, one offered by the Michigan State Police, the other offered by KPAC and Officer Schneider. The only reference is that Mr. Sheets was actually in the house. Mrs. Abu Jaday testified specifically that there were four people there. And she was – during her deposition Let me interrupt you for a moment and just ask one question. One of the police reports said Officer Sheets was in the house during all these events at some point. But your client's position to the contrary was that he wasn't even there on the scene at all. Is that your position? It is not my position, Your Honor. Officer Sheets doesn't dispute that he was present, that he arrived at the scene. What he disputes is that he was the person that opened the garage. Okay. The other two officers denied they did it. Correct. And he's there. Who did it then? Well, there's – so there are four people there, Your Honor. Four law enforcement officers that are referred to by Mrs. Abu Jaday. We know that one of them, Officer Schneider, is a female. We know that Officer Sebring, who is a state police officer, is a male. And then Officer Sheets. But the sworn testimony of Mrs. Abu Jaday was that, in fact, there were four people there. There was Officer Sheets, there was Officer Schneider, there was Officer Sebring, and then there was a fourth unknown officer. Did anybody else say that as well? Well, there were multiple police agencies that responded. The only documents that refer to who was in the house are those by the Michigan State Police and the KPAC officers. And they refer to the episodes that transpired in the house, Your Honor. They don't refer to anything that took place outside of the house. Nobody else says there's four officers. No. I thought it was pretty clear there were only three. No. Now you've got a mysterious fourth. I mean, you guys are the police. You ought to know who the heck's there. Judge, it's not our burden. Could one of the fourth people have been one of the tow truck workers? There were some tow truck people there, too. There were two tow truck people. There was an ambulance that showed up on the scene. And according to Mrs. Abu Jaday, there were four police officers that were on the scene. This is information that you possess, that you know, that you're people. And you're saying, well, because they said there might have been four of us, but we don't know. I mean, to me, there's enough circumstantial evidence that he is there. The other two didn't do it. You can't identify anybody else. It's speculation. It's conjecture whether there was even a fourth person. And, therefore, the circumstance, I mean, circumstantial evidence is enough to get past judgment. Well, Your Honor. Why isn't the circumstantial evidence itself enough to create a genuine issue of material? Because, Your Honor, the mere presence of the officer at the search, without us showing that he was directly responsible, is insufficient to establish. And that's what Judge Cleland was looking at, is the circumstances for a Fourth Amendment search and seizure violation. It's not the excessive force context. And in Benet v. Bettendorf, this court said that mere presence at the scene is not enough. The officer has to be specifically identified. And as- I think I've written cases to the contrary where they come in masked, and they're concealing their identity. And I'm saying, no, the police did this on their own. They have the information. They have the means of saying, okay, we've got five of us there. You can't tell which one of us did this. So guess what? We all go free. I said, no, no, that's not right. You got the information. You know it. You almost-the inference is it's your burden to come forward and say you didn't do it. Your Honor, you're absolutely correct. In Benet v. Bettendorf, that was a case where officers entered the house in the execution of search warrant. They were all masked. And the issue was which of the officers was there. And under those circumstances, there was one officer who was noted to have the shotgun, Officer Bettendorf. And for that reason, in Benet v. Bettendorf, the court determined that when masked officers who are concealing their identities and they have the only means, that's not the circumstance in this case, however, Your Honor, Mrs. Abu-Jaday was asked. She didn't know what department the officer came from. She claimed that an officer came into the house with a bar and then attempted to pry the garage door open but was unsuccessful. The only way in which the garage door could have been opened was that somebody opened a wooden door. And Mrs. Abu-Jaday was asked who opened the wooden door to the garage. I don't know who opened it. She testified at page 59 of her deposition that they couldn't open the electric door and that they had to go through the wood door to open it. And she was specifically asked, whoever opened the wood door, I don't know who opened that door. And then she went on to say, you don't know who opened that door, correct? She said no. She couldn't specifically identify Officer Sheets. And contrary to the assertion by counsel, it was specifically asked... She described him in the house. She couldn't identify him as opening the door because she didn't see the door getting opened. I mean, your opposing counsel's theory is that the facts show three officers on the scene, two denied that they did it, and that leaves Officer Sheets. Why isn't that enough to get past summary judgment? Actually, it isn't the three officers denied it. No, two denied it. Well, they didn't deny it. They said they weren't the one to pry the door open with the crowbar or something like that. That was never an issue on discovery, Your Honor. Actually, those defendants were dismissed, as were ultimately the tow truck drivers. The issue was on our motion... You're not saying that the other two admitted that they did it. You're not saying that. I am not saying that, Your Honor. Well, that's my point. I'm saying that Mrs. Abu Judeh testified under oath that there were four different police officers there. She was specifically asked who opened the door. She said she didn't know who opened the door. She identified that there were guys, three guys, who were standing near the wooden door, but she couldn't identify who opened the door. She couldn't identify... You're arguing something that's not being contested. We know she didn't see the door getting opened. We know that. She didn't see who opened the door. She didn't know that it was Officer Sheets. What plaintiff is attempting to argue is that in a police report which specifically identifies the three officers that were there, Officer Sheets is the person who's identified in the house. We don't dispute that. However, Mrs. Abu Judeh specifically testified under oath that she saw four police officers there. And then when we were asking her to specifically identify who was that person, she was actually shown a photograph during her deposition. She couldn't identify it. The same with Mr. Levesque. A photograph of whom? She was shown a photograph of Officer Sheets and was unable to identify Officer Sheets. Then that same photograph was shown to Mr. Levesque during his deposition. He was unable to identify Officer Sheets. This is a different circumstance than Benet, Your Honor, Judge Griffin, where people were concealing their identities. No one was concealing their identities there. They were all there to be seen. It's undisputed and unrefuted, the affidavit by Mr. Sheets, that he wasn't the one that entered the garage. Is that what he says, or does he qualify, I did not unlawfully enter the garage? I did not unlawfully open the door. Doesn't he qualify it? Your Honor, I think that that's quibbling at this point. I think that his sworn affidavit was, I didn't unlawfully enter the garage because he didn't do it. Did he say because I didn't do it, or did he just end it, I didn't unlawfully enter the garage? I think that he said. I'll read it to you. No, I agree. I think that that's what he said, that he didn't unlawfully enter the garage. But I don't think that in saying that, he was parsing it out to say I actually entered the garage. The purpose of his affidavit was to indicate that he, in fact, did not enter the garage. He didn't open it. He didn't allow the third parties to access. He didn't say all that. Well, Your Honor, and perhaps in the light of this whole argument, it was not drafted as carefully as it could have been. You know, on appeal, we look at the evidence that we presented below. We don't take in new evidence based upon representations of counsel. We see what's in the record. What's in the record is the affidavit, and what he says under oath in the affidavit, the words he says are very important. He might have intended to do something more, but we actually see what he did, and that's what we rule on. Understandably, Your Honor. But at least the court's prior decisions indicate that it's not enough that the officer merely be present, that it has to be specifically shown that he was the person. But would you concede circumstantial evidence is enough, that you do not necessarily have to have direct evidence, if circumstantial evidence points that way? But I would submit, Your Honor, that the circumstantial evidence in this case, based on the testimony of Ms. Iberjude, doesn't. Okay. To answer my question, you would concede that circumstantial evidence is enough, that direct evidence is not necessarily required? Yes, Your Honor, because I think in Binet v. Bettendorf, that's what the court ruled. You're arguing there's not circumstantial evidence here to create a genuine issue. Right. I understand. And that those specific questions were asked of Ms. Iberjude, and that she said no. Sure. Thank you, Your Honor. Thank you. Thank you. Counsel, what about, what do you have to say about all this talk from your opposing counsel that there might have been four officers on the scene instead of three? Ms. Iberjude testified that it was the third officer who left the house, went out to the garage, and that's when the car got repossessed. When EMS came and tended to her husband, who was injured in an altercation with Officer Schneider, inside of the house, after EMS then took Mr. Iberjude out to the ambulance, a fourth car pulled up and the officer never got out of the car. In her deposition, that was the reference to a fourth officer, well after all these events occurred. Now back to the affidavit of Mr. Sheets, which is document lower court 55-10, page ID 431, paragraph 4, quote, while there, I did not open plaintiff's garage without consent, did not enter plaintiff's garage without consent, and did not enter plaintiff's vehicle or participate in the repossession. He affirms, I didn't go in the vehicle, I didn't repossess the vehicle, but I didn't go in the garage without consent. If he didn't go in the garage, he would have said so. That is what this lower court has as evidence of Mr. Sheets. Again, that's page ID 431 from the lower court. Again, Ms. Iberjude could not identify him by name. She identified him as the third officer inside of the house, which all the evidence that I've already pointed out shows is Officer Sheets. I thought she was unable to recognize him by his picture, though, too. That is, she was not able to recognize his picture because of where she was in the house. She was talking with Trooper Sebring, saw a third officer, and she only described him as the man had his hand on the gun. That's how she was describing the third officer coming in. So, no, she was not able to see the face. She just was able to know it was the third officer that came inside of her house and he had his hand on the gun. That's how she described it. And she was genuine in that, that I couldn't do it, and she didn't have the sight lines to be able to see the side door. That's why you have the deposition transcripts of the other two people next to the door that said, I didn't go in the garage, but Sheets just said, I didn't go in the garage without consent. If I have no other questions, I thank you for your time. No other questions. Thank you. The case is submitted. Court may be adjourned. This honorable court is now adjourned. Thank you. All right. We'll see you again. Thanks. Thank you.